UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| VICKI L. H.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:21-cv-032 |
| | ) |
| KILOLO KIJAKAZI[2], | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Vicki H., on January 20, 2021. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Vicki H., filed an application for Disability Insurance Benefits, alleging a disability onset date of February 7, 2013. (Tr. 10). The Disability Determination Bureau denied Vicki H.'s application initially on July 23, 2015, and again upon reconsideration on September 17, 2015. (Tr. 10). Vicki H. subsequently filed a timely request for a hearing on October 12, 2015. (Tr. 10). A hearing was held on April 14, 2017, before Administrative Law Judge (ALJ) Arman Rouf. (Tr. 10). The ALJ issued an unfavorable decision on September 12, 2017. (Tr. 10-22). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6). Vicki H. filed a petition for judicial review of the decision. Both

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.
[2] Andrew M. Saul was the original Defendant in this case. He was sued in his capacity as a public officer. On July 9, 2021, Kilolo Kijakazi became the acting Commissioner of Social Security. Pursuant to **Federal Rule of Civil Procedure 25(d)**, Kilolo Kijakazi has been automatically substituted as a party.

parties agreed to a remand pursuant to **42 U.S.C. § 405(g)**. (Tr. 846). The Appeals Council ordered the ALJ to "[g]ive further consideration to the claimant's age category during the entire period at issue. In doing so, give consideration to the borderline age situation, and determine whether the claimant has additional vocational adversities that justify using an older age category in determining disability at Step 5." (Tr. 851). A second hearing was held on August 14, 2020 (via telephone) before ALJ Kathleen Winters. (Tr. 770). Vocational Expert (VE) Richard P. Oestreich also appeared at the hearing. (Tr. 770). The ALJ issued an unfavorable decision on September 23, 2020. (Tr. 770-80). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.

First, the ALJ found that Vicki H. last met the insured status requirements of the Social Security Act on September 30, 2017. (Tr. 772). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Vicki H. had not engaged in substantial gainful activity from her alleged onset date of February 7, 2013, through her date last insured of September 30, 2017. (Tr. 772).

At step two, the ALJ determined that Vicki H. had the following severe impairments: left knee chondrosis, status post-surgery; bilateral degenerative changes of the knees; degenerative disc disease of the cervical and lumbar spine; and obesity. (Tr. 772). The ALJ found that the above medically determinable impairments significantly limited Vicki H.'s ability to perform basic work activities. (Tr. 773). Vicki H. also alleged disability due to cholelithiasis, diverticulosis, mild hepatomegaly, diffuse fatty liver, major depressive disorder, and generalized anxiety disorder. (Tr. 773). However, the ALJ indicated that those impairments caused no more than a minimal limitation on her ability to engage in basic work activities, and therefore considered them non-severe. (Tr. 773).

At step three, the ALJ concluded that Vicki H. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 774). The ALJ found that no medical evidence indicated diagnostic findings that satisfied any listed impairment. (Tr. 774-75).

After consideration of the entire record, the ALJ then assessed Vicki H.'s residual functional capacity (RFC) as follows:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could stand or walk up to four hours, and sit up to six hours out of an eight-hour workday. She could occasionally reach overhead bilaterally, climb ramps or stairs, balance, stoop, or crouch; but never climb ladders, ropes, or scaffolds, kneel, or crawl. The claimant needed to avoid concentrated exposure to extreme heat and extreme cold; and work with an option to sit or stand, changing positions no more frequently than every 30 minutes, while remaining on task.

(Tr. 775). The ALJ explained that in considering Vicki H.'s symptoms, she followed a two-step process. (Tr. 775). First, she determined whether there was a physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could have been expected to produce Vicki H.'s pain or other symptoms. (Tr. 775). Then she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Vicki H.'s functioning. (Tr. 775).

After considering the evidence, the ALJ found that Vicki H.'s medically determinable impairments reasonably could have caused some symptomology. (Tr. 776). However, the ALJ found that a careful review of the record did not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by Vicki H. (Tr. 776).

3

At step four, the ALJ found that Vicki H. was unable to perform her past relevant work as a hospital housekeeper, day care teacher, or forklift operator. (Tr. 778). However, the ALJ found jobs that existed in significant numbers in the national economy that Vicki H. could perform. (Tr. 779-80). Therefore, the ALJ found that Vicki H. was not under a disability, as defined in the Social Security Act, at any time from February 7, 2013, the alleged onset date, through September 30, 2017, the date last insured. (Tr. 780).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); **Moore v. Colvin**, 743 F.3d 1118, 1120–21 (7th Cir. 2014); **Bates v. Colvin**, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." **Richardson v. Perales**, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting **Consol. Edison Co. v. NLRB**, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see* **Bates**, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. **Roddy v. Astrue**, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." **Lopez ex rel Lopez v. Barnhart**, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 416.920**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 416.920(b)**. If she is, the claimant is not disabled, and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 416.920(c)**; *see* ***Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other

5

work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f);** *see* **Biestek v. Berryhill,** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Vicki H. has requested that the court remand this matter for additional proceedings. In her appeal, Vicki H. argues that the ALJ's RFC was not based upon substantial evidence. Specifically, she claims that the ALJ erred in evaluating her RFC, failed to consider her impairments in combination, failed to apply the older age category, erred in analyzing her subjective symptoms, and that the Commissioner's appointment was constitutionally defective.

Of the four arguments, the court finds it necessary to address only the second and fourth arguments, as the ALJ erred in failing to consider Vicki H.'s obesity in combination with her degenerative knee and spine conditions. This error resulted in the ALJ failing to properly consider Vicki H.'s subjective symptoms. At step two, the ALJ found that Vicki H. suffered from obesity as a severe impairment. (Tr. 772). The ALJ noted that in May 2015, Vicki H. was 225 pounds and 5 feet 7 inches tall, giving her a body mass index ("BMI") of 35.2, which was classified as obese. (Tr. 775). At the hearing in April 2017, Vicki H was 228 pounds and 5 feet 7 inches tall, causing her BMI to increase to 35.7. (Tr. 40). Throughout the relevant time period in the record, her BMI fluctuated between 35.2 and 40.6. (Tr. 40, 197, 417, 433, 444, 633).

An ALJ must "consider the exacerbating effects of a claimant's obesity on her underlying conditions when arriving at a claimant's RFC." **Hernandez v. Astrue**, 277 F.App'x 617, 623-24 (7th Cir. 2008). Even when a claimant does not explicitly list obesity as an impairment in her application for disability, the ALJ still must evaluate how obesity impacts the claimant's overall

condition if the ALJ was put on notice that obesity could be a relevant factor. *Clifford v. Apfel*, 227 F.3d 863, 873, (7th Cir. 2000); *see also* *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012) (stating that [a]n ALJ must factor in obesity when determining the aggregate impact of [a claimant's] impairments"). "The combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." **SSR 19-2p**, 2019 WL 2374244, at *4.

The ALJ only discussed Vicki H.'s obesity when she evaluated the Listings at Step 3. (Tr. 775). The ALJ noted that she must consider cumulative effects of obesity, but merely stated that she "considered the effects of the claimant's obesity in reducing the claimant's residual functional capacity as described below pursuant to SSR 19-2p." (Tr. 775). There is no mention of Vicki H.'s obesity in either the RFC or the narrative discussion about the RFC. (Tr. 775-78). The ALJ failed to acknowledge how Vicki H.'s obesity may have complicated her knee and spine impairments, as well as how it could have impacted any of the imposed limitations. Even if the ALJ thought that Vicki H.'s obesity did not result in limitations on her ability to work, the ALJ should have explained how she reached that conclusion.

The Seventh Circuit repeatedly has held that an ALJ errs when she fails to articulate why musculoskeletal impairments do not require greater functional restrictions when they are aggravated by obesity. *See* **Martinez v. Astrue**, 630 F.3d 693, 698-99 (7th Cir. 2011) (finding the ALJ erred in failing to consider how obesity affected the claimant's knee impairment); **Gentle v. Barnhart**, 430 F.3d 865, 868 (7th Cir. 2005) (the ALJ erred in failing to evaluate the functional limitations caused by disc disease in combination with obesity). Accordingly, the ALJ erred in failing to articulate any considerations for how Vicki H.'s obesity affected her

7

functional limitations, particularly in combination with her knee and spine impairments.[3]

The ALJ's error in failing to consider Vicki H.'s obesity in combination with her other impairments also affected the subjective symptom analysis. An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. **Shideler v. Astrue**, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must explain her evaluation with specific reasons that are supported by the record. **Pepper v. Colvin**, 712 F.3d 351, 367 (7th Cir. 2013). Under **SSR 16-3p**, an ALJ must assess the claimant's subjective symptoms rather than assessing her "credibility."

The ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce her symptoms. **SSR 16-3p**, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." **SSR 16-3p**, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. **SSR 16-3p**, 2016 WL 1119029 at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(i) The individual's daily activities;

(ii) Location, duration, frequency, and intensity of pain or other symptoms;

---

[3] The Commissioner did not respond to Vicki H.'s argument that the ALJ erred in failing to consider her obesity in combination with her musculoskeletal impairments. The Commissioner has therefore waived the opportunity to respond to this argument. *See* **Webster v. Astrue** 580 F.Supp. 2d 785, 794 (W.D. Wis. 2008) (underdeveloped arguments are deemed waived in social security appeals) (citing ***Kochert v. Adagen Med. Int'l, Inc.,*** 491 F.3d 674, 679 (7th Cir. 2007)).

>   (iii)   Precipitating and aggravating factors;
>
>   (iv)    Type, dosage, effectiveness, and side effects of any medication;
>
>   (v)     Treatment, other than medication, for relief of pain or other symptoms;
>
>   (vi)    Other measures taken to relieve pain or other symptoms;
>
>   (vii)   Other factors concerning functional limitations due to pain or other symptoms.

See **20 C.F.R. §404.1529(c)(3).**

The ALJ then must justify her assessment with "specific reasons supported by the record." **Pepper v. Colvin**, 712 F.3d 351, 367 (7th Cir. 2013). Moreover, "the ALJ must explain her [subjective symptoms evaluation] in such a way that allows [the court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." **Murphy v. Colvin**, 759 F.3d 811, 816 (7th Cir. 2014); see **SSR 16-3p**, 2017 WL 5180304, at *10 (Oct. 25, 2017) (The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms"). "[T]he absence of objective medical corroboration for a complainant's subjective accounts of pain does not permit an ALJ to disregard those accounts." **Ghiselli v. Colvin**, 837 F.3d 771, 777 (7th Cir. 2016); see also **Moore v. Colvin**, 743 F.3d 1118, 1125 (7th Cir. 2014) (holding that "the ALJ erred in rejecting [the plaintiff]'s testimony on the basis that it cannot be objectively verified with any reasonable degree of certainty. An ALJ must consider subjective complaints of pain if a claimant has established a medically determined impairment that could reasonably be expected to produce the pain").

In her function report, Vicki H. stated that throbbing and aching pain kept her up at night

9

and that she could not bend over or get up and down without pain and stiffness. (Tr. 206). However, she stated that she could complete laundry, vacuuming, and dusting as long as it did require kneeling or bending. (Tr. 207). She also stated that she had to take breaks in order to complete chores. (Tr. 207). She testified that she struggled with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and climbing stairs. (Tr. 210). In her 2017 hearing, Vicki H. claimed that she had a lot of knee pain if she stood in one position for too long or walked a lot. (Tr. 46). She testified that her hands, legs, and knees would get stiff and that she could not kneel or squat. (Tr. 52). She stated that she could not bend over without pain and that her husband and son did all housework that required bending or squatting. (Tr. 52). She also testified that she used a cane if she had to walk distances and that she never could use stairs. (Tr. 52-54).

The ALJ dismissed Vicki H.'s complaints of pain due to mild objective medical evidence, a lack of consistent treatment, and her ability to perform activities of daily living. (Tr. 776-77). The ALJ relied on findings of mild degenerative changes in both knees, a lack of joint swelling, mild multilevel facet and uncovertebral osteoarthritis, degenerative changes, mild multilevel spondylosis and disc narrowing with minimal scoliosis, and a lack of numbness or tingling in finding that Vicki H.'s pain was not as severe as she alleged. The ALJ found that the consultative examinations showed that Vicki H. could get on and off the examination table, recline, sit up, and partially squat. (Tr. 777). The ALJ further noted normal range of motion in her cervical spine and both knees, as well as full strength in all four extremities and a normal gait. (Tr. 777). The ALJ also relied on a lack of evidence that Vicki H. exhausted all efforts to seek treatments despite financial troubles, and that the record did not indicate any visits to free or subsidized clinics, emergency room visits, or hospitalization. (Tr. 777). Finally, the ALJ relied

on Vicki H.'s ability to make simple meals, complete light housework, drive a car, go out alone, go shopping, manage finances, use a computer, read, and watch television in finding that Vicki H. was not as limited as she alleged. (Tr. 777).

The ALJ did not consider or explain how Vicki H.'s pain or alleged inability to kneel or squat were affected by her obesity. The ALJ did not explain why Vicki H.'s subjective symptoms regarding her knee and spine impairments were not aggravated by her obesity, nor did she explain how she considered the effects that Vicki H.'s obesity may have had in producing her subjective symptoms or in limiting her postural movements. *See* **Barrett v. Barnhart**, 355 F.3d 1065, 1068 (7th Cir. 2004) (holding that "even if [the claimant's] arthritis was not particularly serious in itself, it would interact with her obesity to make standing for two hours at a time more painful than it would be for a person who was either as obese as she or as arthritic as she but not both."). On remand, the ALJ should properly consider Vicki H.'s obesity and its combined effect on her functional limitations and subjective symptoms with her musculoskeletal impairments.

Vicki H. also asserts that the adjudication of her claim was constitutionally defective because 42 U.S.C. § 902(a)(3) violates the separation of powers by limiting the President's authority to remove the Commissioner without cause. *See* **Seila Law LLC v. Consumer Financial Protection Bureau**, 140 S. Ct. 2183 (2020) (finding it unconstitutional where the single head of an executive agency serves for a longer term than the President and can only be removed from the position for cause). While the Commissioner concedes that the removal clause in **42 U.S.C. § 902(a)(3)** violates the separation of powers, this constitutional defect does not on its own support setting aside the denial of benefits. [DE 22 at pg. 4] (*citing* **Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social**

**Security's Tenure Protection**, 2021 WL 2981542 (July 8, 2021) (**OLC Op.**)).

For a number of reasons, Vicki H.'s constitutional claim fails. As an initial matter, a majority of Supreme Court justices who decided *Seila Law* found that the removal clause was severable from the other provisions in the relevant statutes that establish the Consumer Financial Protection Bureau and define its authority. See *Seila Law*, 140 S. Ct. at 2207-11, 2245. Therefore, the agency "may continue to exist and operate notwithstanding Congress's unconstitutional attempt to insulate the agency's Director from removal by the President." *Seila Law*, 140 S. Ct. at 2207-08; see also *Collins v. Yellen*, 141 S. Ct. 1761, 1788 n. 2 (2021) (stating that "[s]ettled precedent also confirms that the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office")

The Social Security Act (SSA) also does not contain an inseverability clause, and therefore the SSA would remain fully functional without the removal clause. See **OLC Op.** 2021 WL 2981542 (concluding that the removal clause, though unconstitutional, does not affect the validity of the remainder of the Social Security Act). Since the remainder of the SSA would remain in effect, the unconstitutional removal clause would not have invalidated the former Commissioner's actions, "including delegating authority to make benefits determinations or ratifying such delegations." *Bowers v. Comm'r of Soc. Sec.,* 2022 WL 34401, at *7 (S.D. Ohio Jan. 4, 2022). Therefore, in order to succeed on this constitutional claim, a claimant must show that the removal clause resulted in some unlawful action which caused harm. "[I]dentifying some conflict between the Constitution and a statute is not enough. They must show that the challenged Government action at issue … was, in fact, unlawful." *Collins*, 141 S. Ct. at 1790 (Thomas, J., concurring). Vicki H. has made no showing of compensable harm, and it is difficult to imagine a scenario in which she could claim that the unconstitutional removal clause resulted

in unlawful ALJ appointments or somehow resulted in an unlawful denial of benefits. *See* ***Robinson v. Kijakazi,*** 2022 WL 443923, at *6 (E.D. Wis. Feb. 14, 2022); *see also* ***Bowers***, 2022 WL, at *8 (citing ***Butcher v. Commissioner of Social Security***, 2021 WL 6033693, at *8 (S.D. Ohio Dec. 21, 2021); ***Crawford v. Commissioner of Social Security***, 2021 WL 5917130, at *8 (S.D. Ohio Dec. 14, 2021).

The Supreme Court in ***Collins*** suggested that compensable harm could be traced to the unconstitutional removal position if the Commissioner played an active role in the agency action, and if the President would have removed the Commissioner to prevent the agency action if not for the unconstitutional removal provision. ***Collins***, 141 S. Ct. at 1788-89; *see also* ***Roth v. Kijakazi***, 2021 WL 6062062, at *5, (W.D. Wis. Dec. 22, 2021). Here, Vicki H. does not argue that either the former Commissioner or former Acting Commissioner played an active role in denying her claim for benefits. She also does not allege that the President would have intervened to stop the former Commissioner or former Acting Commissioner from acting if not for the unconstitutional removal clause. Justice Kagan, in her concurrence in ***Collins***, recognized that the President's choice of Commissioner for the Social Security Administration has very little impact on the result of any individual ALJ or Appeals Council decision. ***Collins***, 141 S. Ct. at 1802 (Kagan, J. concurring) (stating that "[w]hen an agency decision would not capture a President's attention, his removal authority could not make a difference"). As a result, Vicki H.'s constitutional separation of powers claim fails.

Moreover, the ALJ who issued the final decision denying Vicki H.'s claim was not appointed by a Commissioner subject to the unconstitutional removal clause. Instead, the ALJ was appointed by an Acting Commissioner of Social Security, who could be removed at any time by the President. As such, the unconstitutionality of the removal clause had no impact on this

13

ALJ's appointment.

Vicki H. makes other arguments regarding the RFC, her subjective symptoms, and the age categories.  However, because the ALJ erred in failing to properly consider her obesity, the court need not address the additional argument at this time.  Proper analysis of her obesity and its effect on her functional limitations and subjective symptoms may impact the rest of the decision.  The ALJ will have the opportunity to revisit these other issues on remand.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED**.

ENTERED this 16th day of May, 2022.

/s/ Andrew P. Rodovich
United States Magistrate Judge